No. 17,984.

ROBERT ARCHULETA, ET AL. *v.* JEANNE ROSE.
(315 P. [2d] 201)

Decided September 9, 1957. Rehearing denied September 30, 1957.

Mr. ORREL A. DANIEL, Mr. CLIFFORD J. GOBBLE, Messrs. THOMAS & THOMAS, for plaintiffs in error.

Mr. EMORY L. O'CONNELL, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

WE will refer to defendant in error, who was plaintiff below, as plaintiff or by name, and to plaintiffs in error, defendants below, as defendants or by name.

March 5, 1889, the owners of certain real estate in what is now Adams county made a statutory dedication of a townsite under the name of Irondale, and made and recorded a plat subdividing Irondale into blocks and dedicated to the public use all streets as therein designated.

According to the plat, block 86 lies east of block 87 and the two tracts are separated by a platted north and south street sixty feet in width entitled "third avenue." This platted street never was opened to public use. On July 12, 1924, the dedication of this and other streets was vacated as provided by statute. The area in dispute here is the east half (thirty feet) of vacated third avenue. It extends 193 feet north and south between block 86 on the east and block 87 to the west. For more than fifty years a fence ran north and south on approximately

the east line of the disputed ground. This fence, with its intersecting fences on the north and south, enclosed the property in block 87 to which defendants Archuletas held record title, as well as the entire area comprising the once platted street.

Plaintiff Mrs. Rose held record title to property in block 86 directly east of the old fence above mentioned. She brought this action against the Archuletas under Rule 105 (a), R.C.P. Colo., to establish ownership of the one-half of the vacated street contiguous to the land to which she held record title.

The Archuletas denied the Rose claim of title to the land, and alleged that they and their predecessors in interest had been in adverse possession of the strip for more than eighteen years and that for more than twenty years the old fence in question had been recognized and acquiesced in by both parties and their predecessors in interest as the true boundary line between the properties. They petitioned the court for the appointment of a commission under C.R.S. 1953, 118-11-1 (et seq.), to determine the true boundary. The trial court denied this request and upon trial of the issues found them in favor of Mrs. Rose and against the Archuletas. Judgment was entered awarding Mrs. Rose 16.03 feet of the disputed east half of the vacated street. She was the record owner of the contiguous land through one Henebry in whom title was vested upon vacation of the street. As to the remaining 13.97 feet of the 30 foot strip, the trial court held that, due to misdescriptions not here important, neither plaintiff nor defendants had established title. No error is directed to this ruling, and we consider it no further. The trial court rejected the defense of adverse possession and specifically found that any and all fences involved in the dispute served as barriers rather than as marking a boundary line.

Questions to be Determined.

First: *Did the trial court err in refusing to appoint a commission to establish an alleged disputed boundary*

*between lands where the true boundaries thereof can be determined with accuracy?*

■ This question is answered in the negative. C.R.S. 1953, 118-11-1, under which the Archuletas claim to have been entitled to a commission, reads in pertinent part:

"When one or more owners of land, the corners and boundaries of which are lost, destroyed, or in dispute, desire to have the same established, they may bring an action in district court * * *."

In the instant case there was no dispute as to the location of the boundaries of the vacated street which was claimed by the parties. There was a fence along the eastern street boundary and no one contended that the correct original street line could not be determined with accuracy. The controversy involved the question of ownership of land lying west of that undisputed line. The trial court correctly held that the statute was inapplicable to the admitted facts pertinent to the question under consideration.

Second: *Did the trial court err in rejecting a claim of title by adverse possession based upon alleged acquiescence in an old fence as a boundary between the properties involved?*

■ This question is answered in the negative. There is ample evidence contained in this record to sustain the finding of the trial court to the effect that the fence served as a barrier rather than to mark a boundary line between the properties acquiesced in as such by the parties for twenty years. To prove title by adverse possession it was necessary for the Archuletas to establish such possession for eighteen continuous years. This must include the period of time during which the strip in dispute was farmed and "possessed" by one Trippel, a predecessor in interest in defendants' chain of title. The occupancy by Trippel must have been an "adverse possession" if Archuletas' claim is valid.

Trippel, called as a witness for defendants, testified in substance that he owned blocks 87 and 88 from 1931

to November, 1937, and that he farmed the strip in dispute up to the old fence each year, except in 1936 and 1937 which were dry years with no well water on the place. On cross-examination he stated that Henebry showed him the property before he bought it, and informed him that there was supposed to be a roadway in the eastern part of the enclosed tract but it never had been opened up; that he understood from Henebry that it was platted for a street; that he did not consider the old fence to be the actual east boundary of his property; that he could not make claim, and never had made claim to ownership of the area which was supposed to be a street; and that he temporarily farmed the area which had been a street because nobody else was using it. Thus Trippel admitted that his "possession" was not "adverse" as that term is used in the law applicable to such possession. His testimony negatives any intent on his part to claim ownership or to hold the property as his own, hostile to the claims of all others.

The trial court indicated that the opinion of this court in *Lovejoy v. School District,* 129 Colo. 306, 269 P. (2d) 1067, announced the rule which should be applied to the instant case. In that opinion we stated, inter alia:

"The very essence of adverse possession is that the possession must be hostile, not only against the true owner, but against the world as well."

It follows that the disclaimers of Trippel are fatal, both to the claim based upon adverse possession and to that based on acquiescence in a boundary. In neither case could the statute of limitations begin to run against the owner of record until November 1937. That date was less than eighteen years prior to the filing of the complaint by Mrs. Rose on April 8, 1955.

The judgment is affirmed.

Mr. Justice Holland and Mr. Justice Day not participating.