No. 21217.

Mary Ponzio DeCola, Louise Ponzio Myska,
Alice Ponzio York, and Marie Ponzio Roberts
v. Francis R. Bochatey.
(420 P.2d 395)

Decided November 21, 1966. Rehearing denied December 19, 1966.

Laura Frances Riley, for plaintiffs in error.

Peter Cosgriff, Richard L. Eason, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

This writ of error presents a dispute as to the ownership and right to possession of a tract of land consisting of approximately two acres situate just north of the city of Leadville.

Francis R. Bochatey, who was the plaintiff in the trial court and will hereinafter be referred to as the plaintiff, brought an action under R.C.P. Colo. 105, alleging that he was the owner in fee simple, with the right to possession, of certain described real estate situated in Lake

County. The only persons who appeared and contested the plaintiff's complaint were Mary Ponzio DeCola, Louise Ponzio Myska, Alice Ponzio York and Marie Ponzio Roberts, who will be hereinafter referred to as the defendants.

Though the defendants were not identified by name in the plaintiff's complaint, they nevertheless appeared and filed their answer thereto, alleging that as "unknown persons" they claimed an interest in the subject property. In this answer the defendants alleged that it was they who owned in fee simple the subject property, inasmuch as they were heirs-at-law of one Dominick Ponzio, who was their father and who had died intestate in 1957. In this regard it was further alleged that Dominick Ponzio as of the date of his death was the owner in fee simple of the subject property by virtue of his adverse possession of the same from 1926 to 1957. By reply the plaintiff denied the several affirmative allegations of the defendants in their answer relating to the allegedly adverse possession of the subject property by Dominick Ponzio.

Trial of this matter was to the court and culminated in a favorable judgment for the plaintiff. Specifically, the trial court decreed that as of the time of the commencement of the action the plaintiff was the owner in fee simple, with the right of possession, of the subject property and that, conversely, the defendants had no right, title or interest in the subject property. Accordingly, the trial court quieted fee simple title to the real property in question in the plaintiff. By this writ of error the defendants seek reversal of the judgment and decree.

Upon trial the plaintiff testified that he was the "owner" of the subject property as of the date his quiet title action was commenced, and further that as of that time he was also in possession of the property in question. The plaintiff also called as his witness an attorney who had examined the abstract of title covering the

subject property. This witness testified that based upon his examination of the abtract, in his professional opinion, the plaintiff was the record owner of the subject property as of the date when the action was commenced.

At this point in the proceedings the plaintiff rested his case; whereupon the defendants called some six witnesses in an effort to prove that it was Dominick Ponzio who was the owner in fee simple of this land when he died intestate in 1957 by virtue of his act of disseisin through his adverse possession of the subject property from 1926 to the date of his death. By way of rebuttal the plaintiff called several witnesses to rebut the claim of adverse possession. All of which poses, as we see it, the real thrust of the defendants' argument in this court: that the evidence pertaining to adverse possession was of such a nature, both as concerns its quantity and quality, that the trial court was compelled as a matter of law to find that Dominick Ponzio was through his adverse possession of the subject property the owner in fee simple thereof at the date of his death in 1957. Contrarily, the plaintiff contends that even when the evidence on this point is viewed in a light most favorable to the defendants, it only presents at the most a disputed issue of fact to be resolved, not by us, but by the trier of the facts, and that its finding cannot now be disturbed on review.

Although we believe that no good purpose would be served by summarizing in detail the evidence bearing on this issue of adverse possession, it would perhaps put this controversy in better focus by pointing out that from about 1922 to 1957 Dominick Ponzio was the "owner" of, and resided upon, a small tract of land situated more or less adjacent to the subject property. Having died in 1957, Dominick Ponzio was not available to testify upon the trial of this matter as to the nature and extent of his use of the subject property. However, his children and certain others did testify in general that Dominick had "used" the property from time to

time by piling some junk thereon; by permitting his cattle and sheep to graze thereon; and by building some sort of a fence at an uncertain time and at a somewhat indefinite location.

But we are of the firm view that when all of this evidence is examined and analyzed, it is *not* of such a nature as to compel the trier of the facts to find that as a *matter of law* disseisin through adverse possession has been established. Of course the burden of proof in this regard rests upon the defendants. And we agree that at most this evidence posed only an issue of fact and that the trial court's resolution of this matter cannot be disturbed by us on review. *Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636.

In *Lovejoy v. School District No. 46,* 129 Colo. 306, 269 P.2d 1067, we held that the School District's claim of ownership through adverse possession was not supported by the evidence offered upon trial, and in so holding we said:

"The very essence of adverse possession is that the possession must be hostile, not only against the true owner, but against the world as well. *An adverse claim must be hostile at its inception,* because, if the original entry is not openly hostile or adverse, it does not become so, and the statute does not begin to run as against a rightful owner until the adverse claimant disavows the idea of holding for, or in subservience to another, it actually sets up an exclusive right in himself by some clear, positive and unequivocal act. The character of the possession must become hostile in order that it may be deemed to be adverse. And this hostility must continue for the full statutory period. 1 Am. Jur., p. 871, §137. The statute begins to run at the time the possession of the claimant becomes adverse to that of the owner, and this occurs when the claimant sets up title in himself by some clear, positive and unequivocal act.

"*No one representing School District No. 68 ever asserted that the District owned the land until immediately*

*before the commencement of this action.* The District, without color of title to possession, had to be in possession under an open and notorious claim of ownership. *Under the circumstances here, mere occupancy was not sufficient to put any of the true owners on notice that the District claimed the land,* and the burden of proof, as to open, notorious and hostile claim, is upon the District when it claims title by adverse possession without color of title. Every reasonable presumption is made in favor of the true owner as against adverse possession. *Evans v. Welch,* 29 Colo. 355, 68 Pac. 776." (Emphasis supplied.)

 The foregoing is believed to have particular applicability to the present controversy, inasmuch as the evidence as to the nature and character of Dominick Ponzio's *initial* use or occupancy of the subject property was very sketchy, at best. Similarly, there is insufficient evidence that any of the Ponzio's ever asserted that they owned the subject property until the commencement of this action. And finally, under the circumstances the "mere occupancy" of a part of the subject property from time to time justifies the conclusion of the trial court that such does not add up to adverse possession. All things considered, then, in our view the trial court committed no error when it held, in effect, that the defendants had failed to sustain the rather onerous burden of proof which devolves upon one who seeks through adverse possession to divest the record owner of his lawful title to real property. As was said in the *Lovejoy* case, every reasonable presumption is made in favor of the true owner as against one who claims to have acquired title through adverse possession.

The defendants further contend that in no event should title to the subject property have been quieted in the plaintiff, for the reason that the treasurer's deed issued in 1958 to the plaintiff is said to be invalid. This contention would appear to run afoul of our pronouncement in *Harrison v. Everett,* 135 Colo. 55, 308 P.2d 216,

where we said that a defendant in a quiet title action cannot attack the tax title of a plaintiff unless he can show title in himself. Defendants counter this argument by asserting that the *Harrison* case presupposes a "valid" tax title. In this connection the defendants contend that the treasurer's deed issued in the instant case is invalid because Louis Ponzio, their brother, was not notified in the manner prescribed in C.R.S. '53, 137-10-28 of plaintiff's purchase of the subject property at tax sale, and of his application for the issuance of a treasurer's deed. It is the defendant's position that their evidence, in addition to showing adverse possession of the subject property by their father, Dominick Ponzio, also established that Louis Ponzio was in "actual possession and occupancy" of the property in 1958, and that hence he was entitled to "notice" by virtue of the aforementioned statute.

Plaintiffs' answer to this argument is twofold: (1) there is insufficient evidence that Louis Ponzio was "in actual possession or occupancy" of the subject property, as required by C.R.S. '53, 137-10-28, and hence no notice was necessary; and (2) Louis Ponzio had "actual" notice that there had been a tax sale and of the fact that application had been made for a treasurer's deed, and hence he comes within the rule announced in *Johnson v. Dunkel,* 132 Colo. 383, 288 P.2d 343. In our view on this particular matter the plaintiff is correct in both respects. The evidence that Louis Ponzio was in "actual possession or occupancy" of the subject property in 1958 is of the same general character as the evidence pertaining to Dominick Ponzio's allegedly adverse possession of the same from 1926 to 1957. The evidence is rather sketchy, unclear and so lacking in detail as to at the best only pose an issue of disputed fact which has now been resolved adversely to the defendants. Also, it was rather clearly established that Louis Ponzio did have "actual" notice of the tax sale in question and hence under the rationale of the *Johnson* case, neither

he, nor his sisters, can be heard to complain that the tax sale was invalid.

The judgment is therefore affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.